```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

| | | |
|---|---|---|
| WARREN BEAULAH, et al.,           * | | |
|     Plaintiffs,                * | | |
| vs.                               * | | |
|                                     | CASE NO. 4:04-CV-155(CDL) | |
| Muscogee County Sheriff           * | | |
| Deputies JOHNNY ELLERBIE, et al., * | | |
|     Defendants                 * | | |

| | | |
|---|---|---|
| CHERYL N. WALKER,                 * | | |
|     Plaintiff,                 * | | |
| vs.                               * | | |
|                                     | CASE NO. 4:04-CV-161(CDL) | |
| SHERIFF RALPH JOHNSON, in his     * | | |
| official capacity as Sheriff of     | | |
| Muscogee County, Georgia; et al., * | | |
|     Defendants                 * | | |

O R D E R

Presently pending before the Court is Plaintiff Cheryl N. Walker's Motion to Compel identification of a confidential informant who allegedly possesses evidence that is discoverable under the Federal Rules of Civil Procedure (Doc. 36, 4:04-CV-161). Specifically, Plaintiff Walker ("Plaintiff") seeks to compel Defendants to identify the confidential informant ("CI") who provided certain information to the Metro Narcotics Task Force before the traffic stop during which Kenneth Walker was fatally shot. Defendants objected to the disclosure of the CI's identity, asserting the informer's privilege and contending that release of the CI's identity would jeopardize the CI's safety. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part: the

Court refuses to compel disclosure of the CI's identity at this time, but the Court does compel Defendants to allow Plaintiff to depose the CI under the conditions described herein.

## BACKGROUND FACTS[1]

On December 10, 2003, agents of the Metro Narcotics Task Force ("Metro") met with a CI,[2] who told the agents that Darren "Bo Jack" Jackson ("Bo Jack") was selling cocaine out of his 5000 Armour Road apartment in Columbus, Georgia and that Bo Jack always had guns at his apartment. Based on this information, Metro agents, accompanied by the CI, took up positions to observe Bo Jack's apartment. The CI made a recorded telephone call to Bo Jack to order some cocaine from Bo Jack. Bo Jack told the CI that "all the shizzie [cocaine] gone—it's leaving right now" and that he only had two or three ounces of cocaine left. The CI said that the CI would call Bo Jack back. Around the time of this phone conversation between Bo Jack and the CI, a man exited the apartment which the CI identified as Bo Jack's and drove away. Two of the Metro agents followed the man's vehicle and conducted a traffic stop. They arrested the man, who was found to be in possession of 63.7 grams of crack cocaine. After taking the man to the Sheriff's office, the Metro agents returned to their positions observing Bo Jack's apartment.

---

[1] The facts regarding the CI's involvement are taken from the police reports provided by the parties, as well as a transcript of the recorded telephone conversations between the CI and "Bo Jack." See Ex. 3 to Pl.'s Mot. to Compel; Ex. A & B to Def.'s Resp.

[2] According to Plaintiff, the CI was arrested on drug charges on December 10, 2003 and volunteered to be an informant to turn in another drug dealer; Metro agents agreed to the proposal, although the CI had no history working as an informant with the Metro agents.

Later that evening, Metro agents observed another man, whom the CI identified as Bo Jack, leaving Bo Jack's apartment and driving away. Metro agents followed Bo Jack to the La Quinta Inn on Macon Road, where Bo Jack went into a motel room for a few minutes then left the room and returned to his car. The Metro agents lost Bo Jack in traffic and returned to their positions observing his apartment. During this timeframe, the CI had several recorded conversations with Bo Jack, who told the CI that he was picking up drugs for the CI and discussed details of the anticipated transaction with the CI.

While Bo Jack was out, Metro agents observed an SUV enter the parking lot of Bo Jack's apartment complex and pull into the parking space where Bo Jack's vehicle had been. The CI stated that he had seen the SUV before at Bo Jack's apartment and that it belonged to the "Miami Boys." The CI had previously told Metro agents that Bo Jack got his cocaine from the Miami Boys, who drove a large SUV, carried weapons, and traveled in groups of three or four when they dropped off drugs or picked up money. The SUV left the parking lot, and Metro agents followed it to a night club on Sidney Simons Boulevard. The SUV circled the parking lot of the night club and then returned to Bo Jack's apartment complex and parked in the parking space where Bo Jack's vehicle had been. Approximately five minutes later, Bo Jack arrived in his car and parked in the space next to the SUV. Bo Jack got out of his car and met with a man who got out of the SUV, who was carrying something under his arm that appeared to be wrapped in plastic. The two men walked to Bo Jack's apartment. The CI told the Metro agents that the man from the SUV looked like one of the Miami Boys. After a few minutes, three more men got out of the SUV and went into Bo Jack's apartment. After

spending ten to fifteen minutes in Bo Jack's apartment, all four men who had arrived in the SUV left Bo Jack's apartment, returned to the SUV and drove away.  An SUV identified as that same SUV which had been at Bo Jack's apartment was stopped on I-185.  During that stop, Kenneth Walker, one of the passengers, was fatally shot.[3]

## DISCUSSION

Plaintiff, who is Kenneth Walker's widow, filed suit pursuant to 42 U.S.C. § 1983 and various state laws for the unlawful seizure and wrongful death of Kenneth Walker.  She contends, *inter alia*, that Defendants stopped the vehicle in which Kenneth Walker was riding without probable cause or reasonable suspicion.[4]  Plaintiff seeks disclosure of the CI's identity, so that her counsel can question the CI regarding the CI's involvement in and observations of the events leading up to the stop.  Defendants refuse to disclose the CI's identity based on the informer's privilege, but Defendants are willing to make the CI available for a telephone deposition, provided that "adequate steps are taken to protect the CI's identity."  The main question before the Court is whether Plaintiff is entitled to disclosure of the CI's identity.

---

[3] Bo Jack's apartment was later searched, and Bo Jack was arrested. Metro agents asked Bo Jack about the four men in the SUV who had visited his apartment, and Bo Jack indicated that he had seen all four men and was acquainted with three of them but did not know the fourth man.

[4] The Walker lawsuit has been consolidated for pretrial purposes with a lawsuit filed by the other occupants of the Walker vehicle who also seek relief based upon the same conduct giving rise to the Walker lawsuit.

*1. Informer's Privilege*

The informer's privilege is the government's privilege to withhold from disclosure the identity of its informants. *Roviaro v. United States*, 353 U.S. 53, 60 (1957). *Roviaro* was a criminal case, but the informer's privilege applies in civil cases, as well. *Suarez v. United States*, 582 F.2d 1007, 1011 & n.4 (5th Cir. 1978);[5] *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2019.  The privilege is limited: Where disclosure of an informer's identity "is relevant and helpful to the defense of an accused, or is essential to the determination of a cause, the privilege must give way."  *Id.* at 61-62.  The Supreme Court in *Roviaro* set forth a balancing test, which weighs "the public interest in protecting the flow of information against the individual's right to prepare his defense."  *Id.* at 62.  In applying the *Roviaro* balancing test, the Eleventh Circuit focuses its inquiry on the following three factors:  the extent of the informant's participation in the events underlying a litigant's claim, the directness of the relationship between the litigant's claim and the probable testimony of the informant, and the government's interest in nondisclosure.  *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991); *Suarez*, 582 F.2d at 1011-12.

Plaintiff in this case contends that the first factor—the CI's participation in the events underlying her claim—weighs heavily in her favor, arguing that the CI's information was the "sole basis"

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

used by Defendants in making a probable cause determination regarding the stop of the SUV in which Kenneth Walker was a passenger.  While the CI's involvement in this case was more than "mere tipster" and less than "sole participant other than the accused," *see Suarez*, 582 F.2d at 1011 (noting that disclosure is not required if informant was "mere tipster" but may be required if informant was "sole participant other than the accused"), the Court finds that his involvement in the case does not mandate disclosure.  The CI was always with Metro agents, who were observing the events along with him.  Moreover, although Plaintiff contends otherwise, the probable cause determination to stop the SUV was not based solely upon the CI's information—it was also based upon the Metro agents' observations of the events at the scene.  Plaintiff's description of the probable cause determination is too narrow.  According to Defendants, probable cause existed to stop the SUV not because the Metro agents thought, based on the CI's information, that the Miami Boys were riding in the SUV, but rather, because of the Metro agents' perception, based on their observations of the events which took place at Bo Jack's apartment throughout the evening, that the SUV's occupants were involved in illegal drug activity.  Pretermitting for the moment whether the Metro agents' observations were sufficient to establish probable cause, it is clear from the present record before the Court that the probable cause determination was not based *solely* upon the CI's information.  Thus, this factor does not mandate disclosure of the CI's identity.

   The second factor which must be considered is the correlation of Plaintiff's case with the CI's probable testimony.  This factor of the Eleventh Circuit's *Roviaro* balancing test is concerned with the

extent to which an informant's testimony will help a litigant establish his claim. *See Gutierrez*, 931 F.2d at 1491. For example, in a case where the criminal defendant claims that he was misidentified and shows that the informant is the only individual other than a detective who could identify the actual culprit *and* that the informant would testify that the defendant was not the actual culprit, this factor would likely weigh in favor of disclosure. *See United States v. Panton*, (846 F.2d 1335, 1337 (11th Cir. 1988) (remanding case for *in camera* questioning of informer to determine whether his testimony might be of assistance to defendant). Plaintiff in this case contends that because she makes a direct claim that the SUV was stopped without probable cause, the CI's credibility, background, and testimony are critical to her case. Plaintiff does not contend that the CI's probable testimony would significantly aid her claim by refuting the testimony of the Metro agents regarding their observations of the events at Bo Jack's apartment which gave rise to their probable cause determination. Instead, she appears to argue simply that the CI's testimony would help her case because it would show that the CI is unreliable and that it was therefore unreasonable for Metro agents to rely upon the CI's information regarding the resemblance of the SUV and its occupants to the Miami Boys in making the probable cause determination. Even if this type of evidence could be considered to significantly aid Plaintiff's claim, the CI's information was not the sole basis for the probable cause determination. *See supra*. There being no argument or evidence that the CI's testimony would significantly help Plaintiff establish her claim (*i.e.* different from that of the Metro agents regarding the observations giving rise to

7

the probable cause determination), the Court cannot find that this factor weighs in favor of Plaintiff.

Turning to the third factor, the Court notes that Defendants have represented that the CI was given express assurances that his identity would be kept confidential based upon a fear of retaliation from an armed drug dealer.  However, because Plaintiff has failed to establish the other factors for disclosure of the CI's identity, the Court need not consider the strength of Defendants' interest in keeping the CI's identity confidential. *See United States v. Kerris*, 748 F.2d 610, 614 (11th Cir. 1984).

For these reasons, the Court declines to compel disclosure of the CI's identity to Plaintiff.

*2. The Deposition*

Although the identity of the CI is privileged in this case, the CI was, along with Metro agents, an eyewitness to certain events leading up to the stop of the SUV.  Therefore, while the CI's *identity* may be privileged and not discoverable, the Court finds that the information he possesses is relevant to the issues in this lawsuit.  Consequently, Plaintiff should be given an opportunity to obtain discovery from him, so long as his identity remains concealed. *See* Fed. R. Civ. P. 26(b)(1) (providing that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party").  Defendants' proposed solution—a telephone deposition at which Defendants' counsel and representatives would presumably be physically in the presence of the CI while Plaintiff's counsel would not—gives Defendants a potentially unfair advantage.

8

To level the playing field, the Court finds that the CI should be required to appear for a deposition at the Columbus Federal Courthouse, where counsel for the parties can be placed in one room segregated from the CI and be permitted to depose the CI who will be located in a separate room.[6]  The parties will be permitted to question the CI regarding topics relevant to the instant case which would not tend to reveal his identity, including but not limited to the CI's involvement in the events leading to the stop of the SUV and the CI's criminal history.[7]  The Court further finds that Plaintiff's counsel should be provided prior to the deposition with the official record of the CI's criminal history.  Defendants are therefore ordered to produce that record with the CI's name and other identifying information redacted.

Based on the foregoing, counsel for the parties are ordered to confer with each other and with the Court's Courtroom Deputy to determine a date and time for the CI's deposition which is acceptable to the parties and to the Court.  To maintain the concealment of the CI's identity, the Defendants, after a time and date for the deposition has been agreed upon, shall obtain a subpoena from the Clerk under seal directing the CI to appear at the U.S. Marshal's Office in the Columbus Federal Courthouse at the time and date agreed upon by the parties and the Court.  Defendants shall have the

---

[6] The Court has been informed that it has the audio equipment capable for conducting such a deposition by having the attorneys present in the Courtroom and the CI present in the U.S. Marshal's Office.

[7] The Court does not intend to attend the deposition but will be available in Chambers should counsel encounter a disagreement during the deposition as to its scope.

9

subpoena served upon the CI with any return of service being filed under seal.

    IT IS SO ORDERED, this 22nd day of December, 2005.

                                           S/Clay D. Land
                                                CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE