IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CHERYL N. WALKER, Administrator  \*
of Kenneth B. Walker's Estate,
and CHERYL N. WALKER,            \*
Individually, and CHERYL N.
WALKER, Legal Guardian of K.W.,  \*
a Dependent Minor,
                                 \*
        Plaintiffs,
                                 \*
vs.
                                 \*    CASE NO. 4:04-CV-161 (CDL)
SHERIFF RALPH JOHNSON, et al.,
                                 \*
        Defendants.
                                 \*

O R D E R

This case arises from the tragic shooting of Kenneth Walker by Metro Narcotics Task Force Member David Glisson during a traffic stop on December 10, 2003. On August 31, 2006, the Court issued a sixty-two page order granting summary judgment in favor of all Defendants except for Glisson, Stinson, and Price. *See Beaulah v. Muscogee County Sheriff's Deputies,* 447 F. Supp. 2d 1342, 1376 (M.D. Ga. 2006). The Court found that genuine issues of material fact exist as to whether Glisson is personally liable for the death of Kenneth Walker. Therefore, that claim will be decided by a jury. The Court also found that the jury should determine whether Stinson and Price were personally liable for their role in causing the vehicle in which Walker was riding to be stopped on the night in question. In denying Stinson's and Price's Motions for Summary Judgment based upon qualified immunity, the Court relied in part upon the affidavit of the confidential informant ("CI") who Stinson and Price claim provided them with information amounting to probable cause to stop

1

the Walker vehicle. All the parties appealed various aspects of the Court's summary judgment rulings.

While the case was pending on appeal, the U.S. Attorney was conducting a grand jury investigation regarding the shooting. During that investigation, the FBI interviewed the CI who had provided information to Stinson and Price on the night of the incident. The FBI investigation called into question the accuracy and truthfulness of the affidavit submitted by the CI in opposition to Stinson's and Price's Motions for Summary Judgment. Therefore, the U.S. Attorney sought the Court's permission to disclose the grand jury materials. The Court granted that request, and the materials were subsequently disclosed to the parties in the Walker lawsuit. Stinson and Price presently seek to have the Court enter an order indicating that it would set aside its previous ruling denying their Motions for Summary Judgment and would now grant those motions, so Stinson and Price can petition the Court of Appeals to remand the case back to this Court for the entry of such an order.

On December 21, 2007, the Court held a hearing on Stinson's and Price's motions at which time the Court also questioned the CI. Based upon that examination, the Court finds that the CI's testimony upon which the Court partially relied in denying Stinson's and Price's Motions for Summary Judgment was either recanted or no longer worthy of belief. In the absence of that previous testimony and given the other information available to Stinson and Price at the time they ordered the stop of the Walker vehicle, the Court now finds that, as a matter of law, arguable reasonable suspicion existed to stop the Walker vehicle. Accordingly, Stinson and Price are entitled

to qualified immunity, and their Motions for Summary Judgment should be granted.

DISCUSSION

## I. **Jurisdiction**

Preliminarily, the Court must determine whether it has jurisdiction to consider Stinson's and Price's motions for relief under F.R.C.P. 60(b). Generally, "the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal." *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003). A corollary to this general rule is that a district court retains jurisdiction "to entertain and **deny** a Rule 60(b) motion." *Id.* at 1180 (emphasis added). However, the Court may not **grant** a Rule 60(b) motion while the matter is pending on appeal. *Id.* The proper course for a district court to follow when presented with a Rule 60(b) motion after a notice of appeal has been filed is to consider the motion and assess its merits. The court "may then deny the motion or indicate its belief that the arguments raised are meritorious." *Id.* If the district court finds the arguments meritorious, the movant may then petition the court of appeals to remand the case to the district court so that jurisdiction can be conferred on the district court to grant the motion. *Id.*

The Court therefore has jurisdiction to consider and assess the merits of Stinson's and Price's Rule 60(b) motions. Consideration of those motions requires an evaluation of whether the CI's change in his testimony meets the requirements under Rule 60(b) for setting aside the Court's previous denial of summary judgment to Stinson and Price.

3

## II. Relief Under F.R.C.P. 60(b)

Stinson and Price seek to have the Court's previous ruling denying their Motions for Summary Judgment based upon qualified immunity set aside pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. That Rule allows a Court to "relieve a party . . . from a final judgment, order, or proceeding" for certain specified reasons. The circumstances of this case do not fit neatly into any of the Rule's specified reasons for relief. First, no final judgment has been entered against Stinson and Price. The Court did not find that they did not have qualified immunity. The Court simply found that genuine issues of material fact existed and that a jury must therefore make that determination. Consequently, Stinson and Price would have the opportunity at trial to make the same argument that they make now–that is, that in light of the CI's new evidence, they are entitled to qualified immunity as a matter of law. Stinson and Price, however, will be prejudiced if the issue is not resolved now. Their defense, to which this new evidence relates, is an immunity from liability and from suit. If Stinson and Price have qualified immunity, then they are not subject to the continuing burden of the legal process. Furthermore, the Court's previous ruling denying qualified immunity is arguably an appealable order. *See Behrens v. Pelletier,* 516 U.S. 299, 312-314 (1996); *see also Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1286-87 (11th Cir. 2000). Accordingly, it is an order from which a party may seek relief pursuant to Rule 60(b). *See Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1131 (11th Cir. 1986) ("A final judgment under Rule 60(b) is any judgment that is an appealable order."). Therefore, the Court finds that Stinson and Price may seek relief pursuant to Rule

4

60(b) from the Court's order denying them summary judgment based upon qualified immunity. Whether they are entitled to relief depends upon whether the confidential informant's change in his testimony requires the Court to reconsider its previous ruling that genuine issues of material fact exist as to Stinson's and Price's qualified immunity defenses.

### III. Qualified Immunity

Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). To receive qualified immunity, an officer must first show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks and citations omitted). In this case, it is undisputed that Stinson and Price were acting within their discretionary authority during the events giving rise to this lawsuit.

After a defendant establishes that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* In determining whether qualified immunity is appropriate, the courts apply a two-part test. First, the court must determine whether, taken in the light most favorable to the party asserting the injury, the facts

5

alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *see also Lee,* 284 F.3d at 1194. If no constitutional right would have been violated under the plaintiff's version of the facts, there is no need for further inquiry. *Lee,* 284 F.3d at 1194. If, however, the plaintiff's version of the facts establishes a violation of a constitutional right, the court must then determine whether the right was clearly established at the time of the officer's conduct. *Saucier,* 533 U.S. at 201. A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739; *accord Saucier,* 533 U.S. at 202; *see also Evans v. Stephens,* 407 F.3d 1272, 1282 (11th Cir. 2005) (right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (internal quotation marks and citation omitted)). The unlawfulness of the action must be apparent in light of pre-existing law, but there is no requirement that the very action in question has been previously held unlawful. *Hope,* 536 U.S. at 739.

The Court previously denied Stinson's and Price's Motions for Summary Judgment on Plaintiff's unlawful seizure claim. The Court found that genuine issues of material fact existed as to whether their conduct in ordering the stop of the Walker vehicle violated Walker's right to be free from unreasonable search and seizure under the Fourth Amendment. As noted by the Court in its previous order, Stinson and Price would be entitled to qualified immunity if they had ordered the stop of the Yukon based upon "arguable reasonable suspicion" that the Yukon's occupants had engaged, or were about to

6

engage, in a crime. *Beaulah,* 447 F. Supp. 2d at 1361-62 (citing *United States v. Acosta,* 363 F.3d 1141, 1145 (11th Cir. 2004)). A determination of whether Stinson and Price possessed an arguable reasonable suspicion depends upon what information they had available to them at the time they ordered the stop.

In denying summary judgment to Stinson and Price on this claim, the Court previously found that the evidence was in conflict as to what Stinson and Price knew at the time they ordered the stop. *Id.* at 1361. This conflict was created by the CI affidavit filed by Plaintiff in opposition to the summary judgment motions. *Id.* Based upon that affidavit, the Court found that

> if the CI's version of what happened is taken as true, then the Court finds that genuine issues of material fact exist as to whether Stinson and Price had arguable reasonable suspicion to order the stop. If Stinson and Price's version is accepted as true, then they likely had arguable reasonable suspicion.

*Id.* As observed by the Court, it had no choice but to accept the CI's version of the facts at the summary judgment stage, since that version was most favorable to Plaintiff. *See id.*

Accepting as true the version of the facts found in the CI's affidavit, the Court found that a reasonable officer on the scene presented with the same facts as Stinson and Price could not have believed that a reasonable suspicion existed to stop the Yukon. The Court finds it helpful to set out verbatim its analysis from its previous opinion while including in brackets how that analysis is changed by the CI's current recantation of the testimony on which the Court relied. The Court's previous order states:

> First, there is the matter of what the CI actually told the Metro agents regarding Bo Jack's supplier. Although Price and Stinson contend that the CI described the Yukon as

7

> similar to an SUV driven by Bo Jack's drug suppliers, the CI denied that he gave any description of the Yukon.

*Beaulah,* 447 F. Supp. 2d at 1361. [The CI now admits that he did describe the Yukon as similar to an SUV driven by the drug suppliers]. The previous order continues:

> Price and Stinson also assert that the CI described Bo Jack's supplier as being armed and traveling with three or four other people. Again the CI's affidavit squarely contradicts this assertion: the CI stated that he never met or saw the supplier and that he did not know who accompanied the supplier on his travels.

*Id.* [The CI now admits that he did inform Stinson and Price that Bo Jack's suppliers traveled in a group of three to four and that they were always armed]. The order further states, "In addition, Price and Stinson claim that the CI described the drug supplier as a large black male, and the Yukon's driver, Beaulah, matched that description. The CI stated, however, that he had never met or seen the supplier and did not know what he looked like." *Id.* [The CI now states that while he never personally met the drug supplier, he had seen him before with Bo Jack from a distance and could describe him as a large black male].

Based upon the CI's summary judgment affidavit, the Court concluded that when viewing the evidence in the light most favorable to Plaintiff, "the evidence shows that the only information Price and Stinson had about the supplier is that the CI 'heard somewhere' that the supplier was 'a guy from Florida who brings the drugs up in an SUV.'" *Beaulah,* 447 F. Supp. 2d at 1361. The Court further found, based solely upon the CI affidavit, that after Stinson and Price learned that Walker had been shot during the stop of the Yukon, that the CI was told to tell investigators that "a man from the Yukon looked like Bo Jack's supplier from Florida and that the supplier and

8

his associates were heavily armed." *Id.* The Court found that this evidence supported a conclusion for summary judgment purposes that Stinson and Price had fabricated evidence after the fact to support a reasonable suspicion determination. *Id.* at 1361-62. [The CI has now unequivocally recanted this portion of his affidavit stating that it was not true].

Stinson and Price now argue that the Court must disregard those inconsistent portions of the CI's first affidavit relied upon by the Court in its previous order. They contend that those previous inconsistent statements will not be admissible at trial for the truth of the matter asserted in them because they constitute hearsay. The Court agrees. Although a party can oppose summary judgment with evidence that is not in an admissible form at the time of summary judgment, that evidence must be of a type likely to be submitted in admissible form at trial and found to be admissible. *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996). The CI's previous affidavit is clearly hearsay. That affidavit could not be admitted into evidence at trial for the truth of what is contained in it. Plaintiff is correct that it could be used for possible impeachment purposes. However, such impeachment evidence is not substantive evidence of the truth of the statements. Accordingly, this potential impeachment evidence cannot be used to create a genuine issue of material fact for trial. *Id.*[1]

---

[1] Plaintiff argues that the CI's recantation of his previous affidavit creates a credibility issue that should be resolved by the jury. Plaintiff misunderstands the nature of impeachment evidence. Although a jury could disbelieve the CI's current testimony based upon the CI's previous inconsistent statements, the jury could not accept those previous inconsistent statements as substantive evidence for their truth. They would only be admissible for impeachment purposes. Therefore, Plaintiff

9

The Court finds that considering the CI's present testimony is less favorable to Plaintiff than simply disregarding the CI's testimony altogether.[2] Furthermore, the previous affidavit testimony impeaches his present testimony that he gave at the hearing, thus creating a genuine issue of material fact as to the truth of that testimony. Therefore, construing the evidence that will be admissible at trial in the light most favorable to Plaintiff, the Court will disregard the CI's testimony in its entirety. Accordingly, the record establishes the following: the conversation between alleged drug dealer Bo Jack and the CI, which was contemporaneously heard by Stinson and Price, confirmed that extensive illegal drug activity was taking place out of Bo Jack's apartment and that at the time of the surveillance, Bo Jack was in the process of obtaining additional cocaine. Shortly before the stop of the Walker vehicle, Michael Powell was arrested after exiting Bo Jack's apartment building with over sixty-seven grams of cocaine. Furthermore, Bo Jack was seen driving to the La Quinta motel while representing that he was acquiring more cocaine. Bo Jack spent approximately ten to fifteen minutes in a room at the La Quinta. The CI described the Walker vehicle as being similar to the SUV driven by the "Miami Boys," who he described as Bo Jack's suppliers. The

---

cannot now rely upon those statements to avoid summary judgment. At best, Plaintiff would be entitled to have summary judgment decided without any weight given to the CI's testimony at all. Whether the evidence is viewed from the perspective of the CI's current testimony or without the benefit of that testimony, the Court finds that Stinson and Price had arguable reasonable suspicion to order the stop of the Walker vehicle.

[2]The CI's present testimony, as adduced at the hearing in which all parties had an opportunity to cross-examine him, completely corroborates the testimony of Stinson and Price as to what the CI told them on the night in question.

10

SUV pulled in and out of Bo Jack's apartment complex in what appeared to Stinson and Price as a suspicious manner. Bo Jack and the SUV arrived at the apartment nearly simultaneously. The CI described the Miami Boys as traveling in a group of four to five and indicated that they were always armed. There were four passengers in the Walker SUV. The CI described the main supplier as a large black male and the driver of the Walker SUV appeared to be a large black male. One of the SUV passengers carried a package that appeared to be wrapped in plastic under his arm to Bo Jack's apartment. While the SUV passengers were inside Bo Jack's apartment, Bo Jack did not answer his telephone, which the CI said was his modus operandi when conducting drug deals. The SUV passengers remained in the apartment, which the CI described as a "drug trap," for only ten to fifteen minutes. The CI indicated that he felt the Walker SUV was the Miami Boys SUV even though he recognized that it had a Georgia tag. The CI also felt the package carried to the apartment contained cocaine. Finally, although the CI admitted that he had never formally met the supplier, he informed Stinson and Price that the driver of the Walker SUV looked like Bo Jack's supplier.

Given the present record, it is clear that Stinson and Price had reasonable suspicion to believe that the occupants of the Walker SUV were engaged in illegal drug activity. The Court finds that no reasonable jury could conclude otherwise. This reasonable suspicion authorized them to order that the vehicle be stopped for further investigation. Accordingly, Stinson and Price are entitled to qualified immunity, and their Motions for Summary Judgment should be granted.

11

## CONCLUSION

If the Court of Appeals remands this case to this Court, this Court would grant Stinson's and Price's Rule 60(b) motions based upon subsection (2) of that Rule ("newly discovered evidence") and subsection (6) ("any other reason that justifies relief"). The Court would then find as a matter of law that Stinson and Price are entitled to qualified immunity and grant their Motions for Summary Judgment.[3]

IT IS SO ORDERED, this 27th day of December, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[3] The Court's ruling would not affect Plaintiff's claim against Defendant Glisson in his individual capacity for the shooting death of Kenneth Walker. That claim would remain pending for trial.